## HUNTER, et al v. CITY OF CORAL GABLES.
### No. 66-C-6767.
Circuit Court, Dade County.

May 10, 1967.

Darrey A. Davis of Scott, McCarthy, Steel, Hector & Davis, Miami, for plaintiffs.

Edward L. Semple, City Attorney, for defendant City of Coral Gables.

Mallory H. Horton of Horton & Schwartz, Miami, for the intervenors.

HAROLD B. SPAET, Circuit Judge.

This cause came on for final hearing, after due notice, upon the issues made by the complaint for declaratory decree and answer of the defendant. The court heard the testimony, reviewed the documentary evidence, and considered the several briefs submitted.

After final hearing and submission of briefs, and while the cause was under consideration for entry of final decree, certain property owners sought to intervene for the purpose of filing a brief on the merits. Such property owners were granted leave to intervene pursuant to the provisions of Rule 1.230, Florida Rules of Civil Procedure. See Wags Transportation System, Inc. v. City of Miami Beach (Fla. 1956), 88 So.2d 751. The court has given consideration to the brief filed by the intervenors.

The main question presented for determination is whether the controlling provisions of the zoning code of the city of Coral Gables (ordinance no. 1005, as amended) authorize or prohibit the use of the property involved in this suit as the site for the construction of a highrise apartment building. Also involved is the question of the validity of action taken by the city commission prohibiting the construction of any building whatever on the property without the approval of the city commission. The determination of the questions presented requires the construction of the applicable provisions of the zoning code as they apply to and affect the use of the property owned by plaintiffs. No factual issues are involved in this cause. The material facts are uncontroverted. The defendant presented no testimony or evidentiary exhibits. The city relies upon its zoning ordinances and the documentary evidence introduced by plaintiffs.

By complaint for declaratory decree (and supplementary relief), plaintiffs seek a declaration of their rights under the zoning code of the city of Coral Gables to use their property as the site for a high-rise apartment building. Plaintiffs assert that the lands involved in this cause are zoned for apartment use and such lands fully conform to all zoning regulations governing

apartment buildings, and that plaintiffs are entitled to use their lands for such purpose under a proper construction of the applicable provisions of the zoning code. Plaintiffs allege they are in doubt as to their rights under the zoning code by reason of action taken by the city commission on March 15, 1966, prohibiting the use of plaintiffs' property for any purpose whatever. Plaintiffs challenge the constitutionality of the action of the city commission and seek a determination of the validity of such governmental action and supplemental coercive relief.

By answer seeking affirmative relief, the city of Coral Gables takes issue with plaintiffs' interpretation of the zoning code and the application thereof to the property involved. The city alleges that under the applicable provisions of the zoning code plaintiffs are not entitled to construct any building whatever upon their property, unless and until plaintiffs have procured the approval of the city commission. The city seeks a judicial construction of the provisions of the zoning code and a declaration of the rights of the parties thereunder, and a determination of the effect of the zoning code upon the use of the property involved. The city prays for a final decree declaring that plaintiffs have no right under the applicable provisions of the zoning code to use their property for the construction of any building without the prior approval of the city commission.

The intervenors assert, among other things, that the complaint fails to state a cause of action for declaratory relief. The intervenors contend that plaintiffs fail to allege or show that they are in doubt as to any specific right under the applicable provisions of the city zoning code, except for a mere conclusion as to the existence of doubt; that plaintiffs do not point up a doubt, nor do they establish a basis upon which the court can adjudicate and determine the rights of the parties. Intervenors further say that declaratory relief is not the proper remedy under the allegations of the complaint but that mandamus constitutes the correct remedy, if any exists, because plaintiffs are in effect simply claiming that they are entitled to a building permit, and mandamus is the appropriate remedy to compel the issuance of a building permit.

It is well settled that the purpose of mandamus is not to establish a legal right. Its function is to enforce a right which has already been clearly established. In other words, the petitioners must demonstrate their entitlement to a clear legal right to compel the performance of an indisputable legal duty. State v. McNayr (Fla. 1961), 133 So.2d 312; State v. Cochran (Fla.

1959), 114 So.2d 797; Curtis v. City of Miami Beach (Fla. 1950), 46 So.2d 24. While mandamus will lie to enforce a public official to act, it cannot be used to control his discretion. Green v. Walter (Fla. 1964), 161 So.2d 830. In this case, it appears the city takes the position that the city commission under the zoning code is vested with complete and absolute discretion to decide whether the lands involved may or may not be used for construction of a high-rise apartment. The parties are in disagreement whether the right exists to use the property for such purpose under the controlling provisions of the zoning code. This cause does not present a situation of the existence of a clear legal right to compel the performance of an indisputable legal duty. Therefore, it is clear that mandamus does not provide an adequate legal remedy in this instance, and it does not provide an exclusive remedy. The plaintiffs are not seeking a building permit for a specific apartment building. They seek a declaration of their rights to use their property as the site for an appropriate apartment building in accordance with the applicable provisions of the zoning code. The statute is designed to afford a remedy for declaratory relief in advance of the expenditure of the moneys required to prepare plans and specifications for a specific apartment building. Moreover, the statute (§87.12, Florida Statutes) expressly provides that the existence of another adequate remedy shall not preclude a decree for declaratory relief. See Fisher v. Dade County (3rd D.C.A. Fla. 1961), 127 So.2d 132. Although plaintiffs do not question the validity of any provisions of the city zoning code, they do challenge the validity of city commission action ostensibly taken under or arising under the zoning code. Plaintiffs allege they are in doubt as to their rights under the zoning code by reason of the action taken by the city commission thereunder, and they seek a determination of the validity of the governmental action creating the existence of the doubt. A justiciable controversy exists between the parties. The controversy or dispute involves a question of construction of municipal ordinances and the validity of governmental action arising under such municipal ordinances. The declaratory decree statute provides that the court may construe anyone's rights, status or other equitable or legal relations that are affected by municipal ordinances and may determine any question of construction or validity arising under a municipal ordinance and obtain a declaration of rights, status or other equitable or legal relations thereunder. In construing the declaratory decree statute, the courts have held that any person whose rights and status are affected by a municipal ordinance, *or* who

is in doubt as to his rights and status thereunder, may obtain a declaration of his rights and status. Banyan Cafeterias, Inc. #3 v. Faith Lutheran Church (3rd D.C.A. Fla. 1962), 141 So.2d 5, and City of Miami v. Franklin Leslie, Inc. (3rd D.C.A. Fla. 1965), 179 So.2d 622.

The court finds the allegations of the complaint are sufficient to state a cause of action for declaratory relief. The pleadings and evidence establish a need for construction of municipal ordinances and a declaration of the rights and status of the parties. The essential elements necessary to invoke the jurisdiction of the court under the provisions of the declaratory decree statute are present in this cause.

The plaintiffs are the owners of a tract of land, consisting of approximately one-third of an entire block of a platted subdivision, which land is legally described as follows — The westerly 350 feet of the easterly 700 feet of block 5 of the revised plat of *Sunrise Harbour,* according to the plat thereof recorded in plat book 65, at page 22 of the public records of Dade County, Florida.

The recorded plat of Sunrise Harbour shows that block 5 is not subdivided into lots; it is an entire block without any platted lots. It is clearly designated on the subdivision plat as a block, and not an over-size lot. Block 5 consists of 12.3 areas of land containing 534,600 square feet. It has a frontage of 996 feet along Edgewater Drive, and extends 540 feet in depth to the Coral Gables Waterway.

By ordinance no. 940 adopted December 27, 1955, the city commission of the city of Coral Gables zoned block 5 of Sunrise Harbour for apartment use, except the westerly 125 feet thereof, which was zoned for duplex use.

On April 12, 1960, the city commission adopted ordinance no. 8286 authorizing construction of a 13 story apartment building on block 5 of Sunrise Harbour. At the time, the zoning code provided that no apartment building more than 3 stories in height shall be constructed in Coral Gables without special permission of the city commission. See Sakolsky v. City of Coral Gables (Fla. 1963), 151 So.2d 433, 434. By ordinance no. 1475, known as the "High-Rise Ordinance", adopted April 27, 1965, the city commission amended the zoning code to provide that no apartment or hotel building more than 3 stories high shall be constructed on any property abutting or across the street from a single family or duplex residential zone, and that no building in

excess of 13 stories in height shall be constructed in the city of Coral Gables. Thus, since the enactment of ordinance no. 1475 permission of the city commission is no longer required in order to use property for the construction of an apartment not exceeding 13 stories in height, if the property involved is zoned for apartment use, and provided it does not abut or is not located across the street from any property zoned for single family or duplex residential use, and otherwise conforms to all other zoning regulations.

On January 12, 1966, the city commission adopted ordinance no. 1455 amending the zoning code to provide that the westerly 125 feet of block 5 of Sunrise Harbour was rezoned from duplex use to apartment use to permit said property to be utilized for an approved "Town House" development. On January 25, 1966, the city commission, by resolution no. 11834 approved the use of block 5 of Sunrise Harbour for a "Hamlet" development, consisting of four 3 story apartment buildings and one 5 story apartment building. On February 8, 1966, an ordinance was adopted on first reading approving and authorizing the use of block 5 for the proposed "Hamlet" apartment development, subject to certain conditions. On March 15, 1966, the city commission adopted a series of resolutions, whereby resolution no. 11834 adopted on January 25, 1966, approving the proposed apartment development on block 5, was rescinded; and repealing the ordinance adopted February 8, 1966, on first reading; and referring to the planning and zoning board the matter of the proposed apartment development in block 5. The city commission instructed the city manager to issue a directive that no permit shall be issued for any building on block 5 of Sunrise Harbour. On June 20, 1966, the planning and zoning board made a written report to the city commission recommending that no changes be made in the existing zoning of block 5 for apartment use. The city commission decided to take no action on the recommendation of the planning and zoning board. No application of any kind has been made by plaintiffs, and no application concerning the property involved is pending before the city commission or the planning and zoning board. The uncontroverted factual circumstances establish that it would be a useless gesture for plaintiffs to pursue a remedy through the city commission. The law does not require one to pursue administrative remedies before resorting to the courts where such remedy would be of no avail. Hillsborough County v. Twin Lakes Mobile Homes Village, Inc. (2nd D.C.A. Fla. 1963), 153 So.2d 64. In this case, plaintiffs contend that, under the provisions of the zoning code, they have the right to use their

property for a high-rise apartment, without recourse to the city commission; that no permission of the city commission is required by the provisions of the zoning code. On the other hand, the city contends that plaintiffs' property cannot be used for construction of any building without approval of the city commission.

The property owned by the plaintiffs (hereinabove described) consists of 4.3388 acres, and 189,000 square feet. It has a street frontage of 350 feet along Edgewater Drive (a fifty-foot street), and extends a depth of 540 feet from Edgewater Drive to the Coral Gables Waterway. It is the middle third of block 5 of Sunrise Harbour. It is bounded on the east by a tract of vacant land, 350 feet by 540 feet, containing 4.3388 acres, on the west by a vacant tract of land, 296 feet by 540 feet, containing 3.62 acres.

Plaintiffs' property is zoned for apartment use, designated under the zoning code as Use District A-13, Apartment-Hotel Use. It has been so zoned continuously for nearly twelve years — since the recordation of the plat of Sunrise Harbour. Under the provisions of the zoning code, such property cannot be used for any purpose other than the site for apartment or hotel buildings.

All the property abutting plaintiffs' property is zoned for apartment or hotel use. All the property across the street (Edgewater Drive) from plaintiffs' property is also zoned for apartment or hotel use. Apartment buildings have been actually constructed on many of the lots across the street from plaintiffs' property. Plaintiffs' property is surrounded by property zoned for apartments, and a great many of the neighboring lands contain apartment buildings.

The property involved in this suit does not abut any single family or duplex residential zone, nor is there any single family or duplex residential property located across the street. Accordingly, the property conforms to the requirements of ordinance no. 1475 of the city of Coral Gables, known as the "High-Rise Ordinance." It is clear that, under the provisions of such ordinance, the plaintiffs have the right to construct on said property an apartment building not exceeding 13 stories in height. Said provisions of the zoning code authorize and do not in anywise inhibit the use of the property as the site for construction of a 13 story apartment building. Under the terms of the ordinance, no permission or approval of the city commission is required as a condition precedent to the use of said property for such purpose. The height of an apartment building, provided it does not exceed

13 stories, is not a matter within the discretion of the city commission in so far as the property involved in this suit is concerned. This is so because of the terms and clear meaning of ordinance no. 1475 amending the zoning code of the city of Coral Gables.

The city of Coral Gables and the intervenors take the position that the provisions of sections 2.25 and 8.02 of the zoning code (ordinance no. 1005, as amended) prohibit the construction of any building on the property owned by plaintiffs, and therefore, plaintiffs are not entitled to use their property as the site for an apartment building without obtaining approval of the city commission in the nature of a variance from the zoning code.

Section 2.25 of the zoning code provides as follows —

> Section 2.25 LOT. A lot shall be deemed to be any tract, area or parcel of land *platted as a lot* upon a recorded plat intended for occupancy by a use permitted in this ordinance. A "corner lot" is a lot at the junction of and fronting on two or more intersecting streets, or street and canal or waterway.

Section 8.02 of the zoning code provides as follows —

> Section 8.02. BUILDING SITES — R, D AND A USES, GENERAL. Except as may be provided hereinafter to the contrary, in connection with specifically described lots or parcels of land, no building or structure erected, constructed, or designed for an R, D or A Use shall be constructed or erected upon a building site having a street frontage of less than 50 feet; *nor shall more than one such building or structure be constructed or erected upon any one platted lot.* In any case where the building site is upon land that has not been subdivided by a plat recorded in the public records of Dade County, Florida; and in any case where the building site is upon land that has been subdivided by a plat recorded in the public records of Dade County, Florida, into tracts or parcels having an area greater than 10,800 square feet or a street frontage of more than 100 feet, no building or structure erected, constructed or designed for an R, D or A Use shall be constructed or erected upon any building site containing less area than 10,800 square feet, and having a street frontage of less than 100 feet.

The rationale of the argument advanced by defendant and the intervenors is that all of block 5 of Sunrise Harbour constitutes a single platted "lot" under the definition set forth in section 2.25 of the zoning code. And section 8.02 of the zoning code provides that only a single building or structure shall be constructed on any one platted lot. It is contended that, since all of block 5 constitutes a single platted lot or single building site, and plaintiffs' lands are only a part of a single lot, therefore such lands cannot be used as the site for any building whatever, unless and until the city commission grants a variance or exception to such provisions of the zoning code.

The intervenors cite Garvin v. Baker (Fla. 1952), 59 So.2d 360, as authority for the proposition that the city is vested with the power to impose restrictions on the size of lots upon which buildings may be erected. In the cited case, the court said that —

> . . . The size of lots upon which a one-family, two-family, or four-family, building may be erected is a subject for police regulation and when not unreasonable, such regulations do not deprive a person of his property without due process of law.
>
> The mere refusal to approve a map or a plat so that they cannot be recorded does not deprive a person of his right to sell his property or to use it. The regulation as to use is one thing and the right to sell is another. It is not necessary that a plat or a map of a person's property showing lots and blocks be recorded before it can be sold. It may be more convenient to sell by lots and blocks as was shown by a recorded plat, but he may sell it by the inch, the foot, or the yard, and describe it by metes and bounds.

The plaintiffs do not question the right of the city to impose reasonable regulations on the size of lots which may be used as building sites. Plaintiffs contend that the above quoted sections of the zoning code do not prohibit the use of their property as a site for an apartment building, because it is apparent from the plat of Sunrise Harbour (plaintiffs' exhibits 1, 2 and 5) that block 5 is not a single platted lot within the meaning and intent of the definition set forth in section 2.25; and that the provisions of section 8.02, authorizing construction of a building on a tract or parcel having a minimum area of 10,800 square feet or a street frontage of 100 feet, supports plaintiffs' position.

The plaintiffs challenge the validity and constitutionality of the action taken by the city commission on March 15, 1966, instructing the city manager to issue a directive that no permit shall be issued for any building on block 5 of Sunrise Harbour. Plaintiffs contend that denial of the use of their property for any purpose whatever violates the constitutional guaranty of equal protection of the laws. The city contends that such action constitutes a valid exercise of governmental power under the provisions of the above quoted provisions of the zoning code.

It is well settled that in the exercise of the police power a municipality may not deprive owners of all use of their property. In Ocean Villa Apartments, Inc. v. City of Fort Lauderdale (Fla. 1954), 70 So.2d 901, the court said —

> This court is committed to the doctrine that when the application of a zoning ordinance has the effect of completely depriving the owner of the beneficial use of his property by precluding the only use to which it is reasonably adapted, an attack on the validity of the ordinance as applied to the particular property involved will be sustained (cases cited).

And in Beck v. Littlefield (Fla. 1953), 68 So.2d 889, the court said —

> . . . An ordinance was passed in 1936 prohibiting erection of any buildings on the land. This action is construed by appellants as an expression by the city that the property east of the street should never be improved so the view of residents west of the street would be obstructed. Not only is such an interpretation strained but it completely ignores the lack of power in a city to ordain that an owner may not erect any building on his property. Clearly, such an attempt would run afoul of the guaranty of due process. This is so patent that we make the observation at the risk of being charged with indulging in obiter dicta for the constitutionality of the ordinance is not raised. Miami Shores Village v. State, ex rel. Ellis, Fla., 53 So.2d 324.

And in Richey v. Wells, 166 So. 817, the Supreme Court of Florida held that —

> It is settled law that under the Fourteenth Amendment to the Constitution of the United States an unjust and illegal discrimination may arise out·of the enactment of a legislative measure that makes such unjust and illegal discrimination possible, although it is not expressly required by the terms of the law itself as written.
>
> Though a law be fair on its face and impartial in appearance, yet, if it is applied and administered by public authority with an unequal hand, so as to practically make unjust and illegal discriminations between persons in similar circumstances material to their rights, the denial of equal justice is still within the prohibition of the Federal Constitution under the Fourteenth Amendment. . . .

The record reflects that block 5 of Sunrise Harbour is under multiple ownership. The plaintiffs are the owners of the portion of block 5 hereinabove described, and others are the owners of the remaining portions thereof. Block 5 has been divided into three parts of approximately 4 acres each, and each portion thereof is under different ownership. This suit involves only the lands owned by plaintiffs. Admittedly, the plaintiffs had the right to acquire less than the entire block, and they are entitled to use their property for any proper purpose permitted under the zoning regulations of the city of Coral Gables. A construction of the zoning code that produces the result of denying to plaintiffs any use whatever of their property would be unreasonable and infringe upon constitutional guaranties, particularly when property of similar character is accorded different treatment.

It is therefore ordered, adjudged, decreed and declared —

1. The applicable provisions of the zoning code of the city of Coral Gables do not prohibit the use of the property involved in this cause as the site for an apartment building, and the plain-

tiffs are entitled to use said property for such purpose under the provisions of the zoning code.

2. It is the duty of the city of Coral Gables to permit the plaintiffs to use the real property hereinabove described as the site for construction of an apartment building not exceeding 13 stories in height, provided such structure conforms to building regulations, set-back requirements, floor area ratio requirements, and all other requirements applying uniformly to apartment buildings constructed in the city of Coral Gables.

3. The action taken by the city commission on March 15, 1966, instructing the city manager to issue a directive that no permit shall be issued for any building on block 5, is void and unconstitutional in so far as it applies to the property involved in this suit. The city of Coral Gables, and all city officials, including the members of the city commission, are hereby permanently enjoined and restrained from enforcing said directive or acting in accordance therewith, or in anywise interfering with the right of the plaintiffs, or their successors in title, to use said property for the construction of a high-rise apartment structure not exceeding 13 stories in height.

4. The court retains jurisdiction of this cause for the purpose of enforcing and effectuating compliance with the provisions of this final decree, and to enter such further orders as may be necessary and consistent with the terms hereof.

5. The costs of this suit are not taxed against either party. Each party shall bear his own costs.